TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00509-CV






William E. Casteel, Appellant



v.



Crown Life Insurance Company, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 91-11537, HONORABLE JOSEPH H. HART, JUDGE PRESIDING 







 This appeal arises out of a lawsuit involving multiple parties with claims and cross claims
concerning the sale of life insurance policies to Randall and Sandra Ferguson. Specifically, the issues
involved in this appeal pertain to a dispute between appellant William E. Casteel, an insurance agent or
broker, who sued Crown Life Insurance Company ("Crown") for violations of Article 21.21 of the Texas
Insurance Code, violations of the Deceptive Trade Practices Act ("DTPA"), and common law claims. The
trial court granted partial summary judgment in favor of Crown on Casteel's common law claims. The
cause proceeded to trial on Casteel's statutory claims, and the jury awarded damages in favor of Casteel
against Crown and in favor of the Fergusons against both Crown and Casteel. Following post-trial motions
for judgment by the parties, the trial court granted Crown's motion for judgment non obstante veredicto
("NOV") and rendered judgment that Casteel take nothing against Crown. Also following the trial, the
Fergusons settled their claims against Crown and assigned their rights against Casteel to Crown. Crown,
therefore, stands in the place of the Fergusons for the purposes of this appeal. Casteel appeals: (1) the
trial court's partial summary judgment on his common law claims, (2) the trial court's granting of judgment
NOV, and (3) the trial court's refusal to apply a credit in favor of Casteel in the amount of the settlement
payment by Crown to the Fergusons. Crown also appeals, challenging: (1) the sufficiency of the evidence
to support the jury's award of damages for Casteel's past and future mental anguish; (2) the sufficiency of
the evidence to support the jury's finding that Crown violated the DTPA by engaging in unfair or deceptive
acts or practices in the business of insurance and did so knowingly; (3) the sufficiency of the evidence to
support a finding that any action by Crown was a producing cause of Casteel's alleged injuries; (4) the
sufficiency of the evidence to support the jury's award of damages to Casteel for past and future lost
income; (5) the calculation of prejudgment interest; (6) the calculation of treble damages; (7) the award of
attorney's fees to Casteel; (8) the exclusion of certain items of evidence; and (9) portions of Casteel's jury
argument. We will reverse and render judgment on Casteel's 21.21 claim and on Casteel's award of
damages for lost past and future income; reverse and remand judgment on the issues of (1) the application
of settlement credits, (2) prejudgment interest, and (3) attorney's fees. We affirm the remaining portions
of the judgment. 


BACKGROUND


 Between 1986 and 1989, Casteel, a licensed insurance agent or broker, sold life insurance
policies for Crown. During these years, Casteel sold several of Crown's Modified Vanishing Premium
Policies ("MVPs") to his clients, many of whom were friends from his church. The MVP policies provided
for substantial premiums to be paid for a short period of time and then for the premiums to vanish, allowing
the policy to carry itself by reinvesting the dividends from the policy. Crown provided Casteel with
information and illustrations about the policies and how they worked. Casteel provided information
regarding the proposed insureds to Crown, allowing Crown to produce illustrations for the proposed
insureds. Then, Casteel presented the sales packages to the proposed insureds.

 In 1990, Casteel began receiving complaints about the MVP policies. The clients had
learned that, rather than operating as proposed, the premiums had not vanished, and in some cases, they
would never vanish. Two of these unhappy clients were Randall and Sandra Ferguson. The Fergusons,
as well as several other clients, sued Casteel and Crown for violations of the Deceptive Trade Practices
Act ("DTPA"), Article 21.21 of the Texas Insurance Code ("Article 21.21"), and common law causes of
action. See Tex. Bus. & Com. Code Ann. § 17.46 (West 1987 & Supp. 1997); Tex. Ins. Code Ann. art.
21.21 (West 1991 & Supp. 1997). Crown initially agreed to provide representation to Casteel, and the
attorney provided told Casteel that he had no cause of action against Crown for any misrepresentations
made to him by Crown.

 In 1994, Casteel discharged the attorney provided by Crown, hired new attorneys, and
filed a cross-claim against Crown for violations of Article 21.21, DTPA violations, and common law causes
of negligence, gross negligence, breach of the duty of good faith and fair dealing, breach of a fiduciary duty,
fraud, and constructive fraud. Crown moved for summary judgment on Casteel's claims. The trial court
granted summary judgment in favor of Crown on Casteel's common law causes of action but denied
summary judgment on the Article 21.21 and DTPA claims. These two claims, as well as the Fergusons'
claims, proceeded to trial.

 On the Fergusons' claims against Crown and Casteel, the jury found that Crown had
committed all of the acts alleged by the Fergusons and had done so knowingly, and that Casteel, like
Crown, had engaged in false, misleading, unfair, or deceptive acts or practices which were producing
causes of damages to the Fergusons but that Casteel had not acted knowingly. Additionally, the jury found
that Crown was 99% responsible for the Fergusons' damages and that Casteel was 1% responsible. As
for Casteel's cross-claims against Crown, the jury found that Crown had knowingly engaged in false,
misleading, unfair, or deceptive acts or practices which were producing causes of damages to Casteel. The
jury also found that Casteel had suffered past lost income in the amount of $400,000; will suffer future loss
of income in the amount of $1,000,000; had suffered past mental anguish in the amount of $6,000,000; and
will suffer future mental anguish in the amount of $100,000. The jury also awarded Casteel 40% of his
recovery as attorney's fees.

 Crown moved for judgment NOV. The trial court granted the motion: (1) rendering
judgment on the jury verdict with respect to the Fergusons' claims against Casteel and holding Casteel
individually liable for the Fergusons' actual damages, attorney's fees, and prejudgment interest in the
amount of $1,366,983.00; (2) finding that Casteel is neither a "person" nor a "consumer" entitled to bring
suit under Article 21.21 and rendering judgment that Casteel take nothing against Crown; and (3)
dismissing the Fergusons' claims against Crown with prejudice following a post-trial settlement between
Crown and the Fergusons.

 Casteel appealed, raising four points of error challenging the trial court's judgment and
partial summary judgment; Crown also appealed, raising nineteen cross points. 


DISCUSSION


Casteel's Statutory Causes of Action

 Article 21.21, section 16(a) of the Insurance Code creates and authorizes a statutory cause
of action in the following terms:


Any person who has sustained actual damages caused by another's engaging in an act or
practice declared in Section 4 of this Article to be . . . unfair or deceptive acts or practices
in the business of insurance or in any practice specifically enumerated in a subdivision of
Section 17.46(b), Business and Commerce Code, as an unlawful deceptive trade practice
may maintain an action against the person or persons engaging in such acts or practices.



Tex. Ins. Code Ann. art. 21.21, § 16(a) (West Supp. 1997) (emphasis added). Casteel alleged causes
of action against Crown for "unfair or deceptive acts or practices in the business of insurance" and for a
"practice specifically enumerated in a subdivision of Section 17.46(b)" of the Business and Commerce
Code, a part of the DTPA. 

 In his first point of error, Casteel challenges the trial court's grant of judgment NOV in
favor of Crown, claiming he is a "person" entitled to maintain an action under Article 21.21 of the Texas
Insurance Code ("21.21"). (1) Casteel argues that the trial court's ruling that he is not a person entitled to sue
under the statute is contrary to the plain language of the statute itself. Crown argues that to have standing
to sue, a "person" must be "either an insured or an intended beneficiary" of an insurance policy. This Court
recently noted, however, that Article 21.21, section 16(a) states the required elements for an action under
21.21: (1) actual damages (2) sustained by any person and (3) caused by another's engaging in an act or
practice (4) declared unfair or deceptive in section 4 of the article. Keightley v. Republic Ins. Co., 946
S.W.2d 124, 127-28 (Tex. App.--Austin 1997, no writ). Additionally, the plain language of section 2(a)
defines "person" as "any individual . . . engaged in the business of insurance, including agents, brokers,
adjusters, and life insurance counselors. Ins. Code art. 21.21, § 2(a) (emphasis added). Nowhere in
the article is "person" defined otherwise. See Ins. Code art. 21.21. The statutory elements are exclusive,
and we may not add to them an element requiring a person to be either an insured or an intended
beneficiary of an insurance contract. See Mingus v. Wadley, 285 S.W. 1084, 1087 (Tex. 1926);
Keightley, 946 S.W.2d at 128 (refusing to require privity of contract for standing to sue under Article
21.21). Because the plain meaning of this definition includes agents and brokers as "persons," we hold that
Casteel has standing to sue Crown for unfair and deceptive acts or practices in the business of insurance
under Article 21.21, section 16(a). (2) We, therefore, sustain Casteel's first point of error. 

 Casteel also sued Crown under Article 21.21, claiming violations of the DTPA. Tex. Bus.
& Com. Code Ann. § 17.46. In his second point of error, Casteel contends the trial court erred by
granting Crown's judgment NOV on the basis that he is not a "consumer" and, therefore, lacks standing
to sue under this portion of Article 21.21. This statutory cause of action is available only to "consumers,"
a word defined as a person who seeks or acquires goods or services "by purchase or lease." See Tex.
Bus.& Com. Code Ann. § 17.45(4) (West Supp. 1997); Transport Ins. Co. v. Faircloth, 898 S.W.2d
269, 274 (Tex. 1995); Keightley, 946 S.W.2d at 128. Casteel admits that he is not a consumer. We
hold, therefore, that the trial court did not err by granting judgment NOV in favor of Crown regarding
Casteel's cause of action based upon the DTPA. We overrule Casteel's second point of error.


Casteel's Common Law Causes of Action

 In addition to his statutory causes of action, Casteel claimed negligence, gross negligence,
breach of the duty of good faith and fair dealing, fraud, breach of a fiduciary duty, and constructive fraud. 
In his third point of error, Casteel challenges the trial court's granting of partial summary judgment in favor
of Crown on these common law causes of action. The standards for reviewing a motion for summary
judgment are well established: (1) the movant for summary judgment has the burden of showing that no
genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding
whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the
nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the
nonmovant and any doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690 S.W.2d
546, 548-49 (Tex. 1985). 

 Critical requirements for a negligence cause of action are the existence and breach of a duty
owed to the plaintiff. In deciding whether the facts of this case can sustain a cause of action for negligence,
this Court should consider both the source of the defendant's duty to act (whether it arose solely out of the
contract or from some common-law duty) and the nature of the remedy sought by the plaintiff. Crawford
v. Ace Sign, Inc., 917 S.W.2d 12, 13 (Tex. 1996); Southwestern Bell Tel. Co. v. DeLanney, 809
S.W.2d 493, 494 (Tex. 1991). The conduct of a contracting party may be the basis for tort liability only
if such conduct would give rise to liability independent of the fact that a contract exists between the parties. 
DeLanney, 809 S.W.2d at 494. Texas law does not impose a duty on a principal to exercise ordinary
care regarding information provided to its agents. Additionally, Casteel's relationship with Crown was
created and governed by contract. 

 Casteel specifically alleged that Crown "had a duty to exercise ordinary care in advising
Casteel of all aspects of the product which Crown Life was asking its agent to sell," and that "Crown Life
failed to disclose material information to Casteel in breach of its duties . . . ." Casteel sought to recover
commissions he would have earned had he been able to continue selling life insurance policies for Crown
and damages for mental anguish due to the loss of his business after his dealings with Crown. Regarding
the commissions, Casteel clearly seeks to recover the benefit of his bargain with Crown, and any mental
anguish also resulted from the loss of profits and business. Casteel's cause of action and damages is based
upon his business dealings with Crown which arose out of their contractual relationship. Accordingly,
Casteel's cause of action sounds in contract rather than tort. The trial court did not err by granting
summary judgment in favor of Crown on Casteel's negligence claim. Additionally, because one's conduct
cannot be grossly negligent without being negligent, the trial court did not err by granting summary judgment
in favor of Crown on Casteel's gross negligence cause of action. See Trevino v. Lightning Laydown,
Inc., 782 S.W.2d 946, 949 (Tex. App.--Austin 1990, writ denied). 

 Casteel also asserted a cause of action against Crown for breach of the duty of good faith
and fair dealing. Under Texas law, a duty of good faith and fair dealing only arises when a special
relationship exists between parties to a contract. See Arnold v. National County Mut. Ins. Co., 725
S.W.2d 165, 167 (Tex. 1987). While a duty of good faith and fair dealing is recognized as running from
an agent to its principal, see American Indem. Co. v. Baumgart, 840 S.W.2d 634, 639 (Tex.
App.--Corpus Christi 1992, no writ), and a special relationship exists between an insured and the insurer,
see, e.g., Arnold, 725 S.W.2d at 167, the contractual relationship between an insurance company and its
agents has never been classified as a special relationship. In the insurance context, a special relationship
arises out of the parties' unequal bargaining power and as a result of the exclusivity of control possessed
by the insurer over the processing of claims. See Arnold, 725 S.W.2d at 165; Aranda v. Ins. Co. of N.
Am., 748 S.W.2d 210 (Tex. 1988). The same rationale exists outside the insurance context, with courts
recognizing "special relationships" when one party has unequal bargaining power and the power to take
undue advantage of the other. See Affiliated Capital Corp. v. Southwest, Inc., 862 S.W.2d 30, 34
(Tex. App.--Houston [1st Dist.] 1993, writ denied). 

 Texas courts have declined to hold, however, that a special relationship exists in many
contexts. See Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp., 823 S.W.2d 591, 596 (Tex.
1992) (franchisee-franchiser); FDIC v. Coleman, 795 S.W.2d 706, 709 (Tex. 1990)
(creditor-guarantor); Nance v. Resolution Trust Corp., 803 S.W.2d 323, 333 (Tex. App.--San Antonio
1990), writ denied per curiam, 813 S.W.2d 154 (1991) (lender-borrower); Adolph Coors Co. v.
Rodriguez, 780 S.W.2d 477, 481 (Tex. App.--Corpus Christi 1989, writ denied) (supplier-distributor);
Lovell v. Western Nat'l Life Ins. Co., 754 S.W.2d 298, 303 (Tex. App.--Amarillo 1988, writ denied)
(mortgagor-mortgagee). Similarly, the relationship between an insurer and its agent or broker is not one
of unequal bargaining power that allows one party to take undue advantage of the other and, therefore,
does not give rise to a special relationship. We, therefore, hold that a "special relationship" does not exist
between an insurance company and its agent or broker. Absent a special relationship, the trial court did
not err by granting summary judgment in favor of Crown on Casteel's claim for breach of the duty of good
faith and fair dealing. 

 Casteel also raised a similar cause of action, claiming Crown breached its fiduciary duty
to him. Historically, Texas courts have recognized that certain relationships give rise to a "fiduciary" duty
as a matter of law, such as attorney-client, trustee-beneficiary, partners, and joint venturers. See Thigpen
v. Locke, 363 S.W.2d 247, 253 (Tex. 1962); Miller-Rogaska, Inc. v. Bank One, Tex., N.A., 931
S.W.2d 655, 663, (Tex. App.--Dallas 1996, no writ). And a fiduciary relationship has been recognized
between an agent and its principal. See Kinzbach Tool Co. v. Corbett-Wallace Corp., 160 S.W.2d 509,
513 (Tex. 1942). As with other fiduciary relationships such as attorney-client, however, only one party
is bound by a fiduciary duty because of that party's duty to act for the benefit of and in the interest of the
other party. In Kinzbach Tool, an agent was held to have a fiduciary duty to the principal. Id. at 513. 
An agent acts on behalf of its principal rather than the principal acting on behalf of the agent, and no Texas
case has held that a principal owes a fiduciary duty to an agent. 

 Courts have also recognized that certain informal relationships may give rise to a fiduciary
duty. See, e.g., Crim Truck & Tractor Co., 823 S.W.2d at 596; MacDonald v. Follett, 180 S.W.2d
334 (Tex. 1944). Such informal fiduciary relationships have also been termed "confidential relationships"
and may arise where one person trusts in and relies upon another, regardless of whether the relationship
is a moral, social, domestic or even merely a personal one. Crim Truck & Tractor Co., 823 S.W.2d at
593-94. Because not every relationship involving a high degree of trust and confidence rises to the stature
of a formal fiduciary relationship, the law recognizes the existence of confidential relationships in those cases
"in which influence has been acquired and abused, in which confidence has been reposed and betrayed." 
Id.; Texas Bank & Trust Co. v. Moore, 595 S.W.2d 502, 507 (Tex. 1980). 

 The existence of a confidential relationship is usually a question of fact. See Crim Truck
& Tractor Co., 823 S.W.2d at 593-94. However, when the issue is one of no evidence, it becomes a
question of law. See id.; Thigpen, 363 S.W.2d at 253. The summary judgment record contains no
evidence to support a finding of a confidential relationship. The mere fact that Casteel and Crown had a
business relationship based upon a contract which continued over several years did not create between
them a confidential relationship. See Crim Truck & Tractor Co., 823 S.W.2d at 595-96 (forty-year
relationship was insufficient to create a fiduciary or confidential relationship); Thigpen, 363 S.W.2d at 253
(privity of contract does not give rise to a confidential relationship). Because there is no evidence of the
fact, we hold as a matter of law that no confidential relationship existed between Casteel and Crown. See
Crim Truck & Tractor Co., 823 S.W.2d at 593-94. Because no fiduciary relationship and no confidential
relationship existed between the parties as a matter of law, the trial court did not err by granting summary
judgment in favor of Crown on Casteel's claim that Crown breached its fiduciary duty to him.

 Finally, Casteel alleged causes of action for fraud and constructive fraud. Crown raised
in its pleadings in response to Casteel's cross-action and in its motion for summary judgment the affirmative
defenses of ratification and waiver. (3) Summary judgment is proper when each element of an affirmative
defense to a plaintiff's cause of action is established as a matter of law. Tex. R. Civ. P. 166a(c); Nixon,
690 S.W.2d 548-49. In order to prove ratification or waiver, Crown had to show that Casteel either (1)
continued to accept benefits under the life insurance sales after he became aware of the fraud or breach,
or (2) conducted himself so as to recognize the life insurance agreements with Crown as binding. See LSR
Joint Venture No. 2 v. Callewart, 837 S.W.2d 693, 699 (Tex. App.--Dallas 1992, writ denied);
Spangler v. Jones, 797 S.W.2d 125, 131 (Tex. App.--Dallas 1990, writ denied). Crown had to prove
that Casteel (1) had full knowledge of the fraudulent acts or breach at the time of ratification and (2)
intentionally chose to ratify the contract in spite of the alleged fraud. See Callewart, 837 S.W.2d at 699;
Spangler, 797 S.W.2d at 131. 

 Crown's summary judgment evidence included the affidavit of James R. Hicks, showing
that Casteel continued to accept benefits under the life insurance policies even after he had filed his cross-action against Crown for fraud or breach. Casteel did not controvert this evidence on summary judgment. 
We, therefore, hold that Casteel ratified the sales of the life insurance policies and waived any claim of fraud
in connection with those sales. See Callewart, 837 S.W.2d at 699. Accordingly, the trial court did not
err by granting Crown's motion for summary judgment on Casteel's claim of fraud. 

 Because the trial court did not err by granting summary judgment in favor of Crown on
Casteel's common law causes of action, we overrule Casteel's third point of error. 


Settlement Credits

 In his fourth point of error, Casteel challenges the trial court's denial of his motion to
modify, correct, and reform the judgment seeking a credit for payments Crown made to the Fergusons. 
Casteel argues that the trial court found Casteel and Crown to be jointly and severally liable for the
Fergusons' actual damages (4) and that, therefore, the one satisfaction rule applies. 

 Under the one satisfaction rule, a plaintiff is entitled to receive only one satisfaction for any
damages suffered. Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 7 (Tex. 1991). This rule applies
when the defendants commit the same act and when defendants commit technically different acts that result
in a single injury. Id. The latter situation is found under the facts of this case. Here, Casteel and Crown
committed technically different acts that caused the original plaintiffs, the Fergusons, to suffer a single
financial injury. 

 Casteel contends he was entitled to a reduction in the amount for which he was jointly and
severally liable--actual damages and attorney's fees. Crown argues, however, that its settlement should
first be applied to the total amount for which it was found to be liable. When a plaintiff sues several
defendants and alleges different types of damages, a credit against a verdict given to a non-settling
defendant must be for those damages common to the settling and non-settling defendants. Paschall v.
Peevey, 813 S.W.2d 710, 712 (Tex. App.--Austin 1991, writ denied). Crown and Casteel stipulated
that the amount of the settlement between Crown and the Fergusons was at least $1,366,983.00. Casteel
was, therefore, entitled to a dollar-for-dollar credit on the amount for which he and Crown were jointly and
severally liable, that being the Fergusons' actual damages and attorney's fees, in the amount of
$1,366,983.00. Casteel is liable for any damages for which he is jointly and severally liable which remain
outstanding after the settlement credit is applied. (5) We hold the trial court erred by failing to apply a dollar-for-dollar credit to the amount for which Casteel is liable. We, therefore, sustain Casteel's fourth point of
error. 




Crown's Cross Points

 Crown has also raised cross points on appeal. In cross points two and three, Crown
contends the evidence is legally and factually insufficient to support the jury's findings that Casteel suffered
past mental anguish damages in the amount of $6,000,000 and that he will suffer future mental anguish
damages in the amount of $100,000. 

 In deciding a no-evidence point of error, we must consider only the evidence and inferences
tending to support the finding of the trier of fact and disregard all evidence to the contrary. Burroughs
Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Best v. Ryan Auto Group, Inc., 786 S.W.2d
670, 671 (Tex. 1990). We will uphold the finding if more than a scintilla of evidence supports it. Crye,
907 S.W.2d at 499; Seideneck v. Carl Bayreuther Assocs., 451 S.W.2d 752, 755 (Tex. 1970); In re
King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). The evidence supporting a finding amounts to more
than a scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case.
Crye, 907 S.W.2d at 499; Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994); City of
Stephenville v. Texas Parks & Wildlife Dep't, 940 S.W.2d 667, 672 (Tex. App.--Austin 1996, writ
denied). 

 When reviewing a jury's verdict to determine the factual sufficiency of the evidence, we
must consider and weigh all the evidence, both in support of and contrary to the finding and should set aside
the judgment only if, after reviewing the entire record, the challenged finding of fact is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175,
176 (Tex. 1986); In re King's Estate, 244 S.W.2d at 661; City of Stephenville, 940 S.W.2d at 672. 
The jury's finding must be upheld unless it is so against the great weight and preponderance of the evidence
as to be manifestly unjust or erroneous. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986). 
We are not free to substitute our judgment for the jury's simply because we may disagree with the verdict. 
Herbert v. Herbert, 754 S.W.2d 141, 142 (Tex. 1988). 

 Damages for mental anguish cannot be awarded without either direct evidence of "the
nature, duration, or severity of [plaintiffs'] anguish, thus establishing a substantial disruption in the plaintiffs'
daily routine, or other evidence of a high degree of mental pain and distress that is more than mere worry,
anxiety, vexation, embarrassment, or anger." Saenz v. Fidelity & Guar. Ins. Underwriters, 925 S.W.2d
607, 614 (Tex. 1996); Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995). There must also
be evidence that the amount found is fair and reasonable compensation. Saenz, 925 S.W.2d at 614. The
supreme court, in Saenz, expressly rejected the notion that "[t]ranslating mental anguish into dollars is
necessarily an arbitrary process for which the jury is given no guidelines." Id. The court pointed out that
while juries must be given a measure of discretion in finding damages, that discretion is limited and "juries
cannot simply pick a number and put it in the blank." Id. 

 Crown does not challenge the sufficiency of the evidence to support a finding that Casteel
suffered and will continue to suffer mental anguish. Rather, Crown's attack focuses on the sufficiency of
the evidence to support the amounts awarded. In this case, Casteel testified that he lost his business,
friends, and his reputation due to the dispute, that he required psychiatric treatment and medications due
to the stress and disruption in his life, that he suffered short and long term memory loss, and that he had
attempted suicide due to his depression from these events. Additionally, his wife, Toni Casteel, testified
about the effect this dispute had on Casteel's life. While this evidence supports a finding that Casteel
suffered from past mental anguish, nothing in the record shows that the award of $6,000,000 is fair and
reasonable compensation for that anguish. Id. In this case, the jury was left to simply pick a number. 
Because there is no evidence to support a finding that Casteel suffered past mental anguish damages in the
amount of $6,000,000, we sustain Crown's second cross point. 

 Moreover, we find no evidence, and Casteel directs us to nothing, in the record to support
a finding that he will suffer mental anguish in the future. Because there is no evidence showing that Casteel
will suffer mental anguish in the future or that $100,000 would be fair and reasonable compensation, we
accordingly sustain Crown's third cross point. Id. Having determined that the award for past and future
mental anguish is not supported by sufficient evidence, we need not address Crown's fourth cross point
suggesting a remittitur if sufficient evidence was found. 

 In cross points five and six, Crown challenges the legal and factual sufficiency of the
evidence to support the jury's finding that Crown, in its relationship with Casteel, engaged in unfair or
deceptive acts or practices in the business of insurance, in violation of the Insurance Code, and the finding
that Crown knowingly engaged in such conduct. To the extent that Crown's cross points relate to the
alleged violations of the DTPA provisions of Article 21.21, Crown is correct because Casteel did not have
standing to sue for such violations because he is not a "consumer." See Keightley, 946 S.W.2d at 128. 
However, because we hold Casteel had standing to sue as a "person" under Article 21.21, we will review
the evidence regarding the jury's findings of violations by Crown. 

 The evidence, taken in the light most favorable to the jury's finding, shows Crown knew
the MVP policies would not perform as claimed, Crown knew that the premiums would not vanish, and
that Crown knew this information and continued to communicate to Casteel that the policies would work
as marketed. Crown has not challenged this evidence on appeal; rather, it relies solely upon its claim that
Casteel is neither a person nor a consumer under Article 21.21. Taking the evidence in the light most
favorable to the jury's finding, we cannot say the finding is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. See Cain, 709 S.W.2d at 176. We overrule Crown's fifth
and sixth cross points. 

 In its first cross point, Crown contends that judgment cannot be rendered in favor of
Casteel based upon jury question sixteen because the word "another" was substituted for "a consumer." (6) 
Jury question sixteen inquired about multiple acts that constitute unfair or deceptive acts or practices in the
business of insurance, including sub-part "e," "failing to disclose information concerning an insurance policy
which was known at the time of the transaction with the intention to induce another into a transaction."

 Crown argues that the inclusion of sub-part "e" was error because this is one of the
enumerated DTPA violations included in Article 21.21 requiring consumer status. See Faircloth, 898
S.W.2d at 274. Therefore, the entire question is flawed and judgment cannot be rendered in Casteel's
favor based upon question sixteen. We disagree. Even assuming this portion of jury question sixteen is
improper, in order to determine whether an error in the jury charge is harmful, we must consider the
pleadings of the parties, the evidence presented at trial, and the charge in its entirety. Island Recreational
Dev. Corp. v. Republic of Tex. Sav. Assoc., 710 S.W.2d 551, 555 (Tex. 1986); Hart v. Berko, Inc.,
881 S.W.2d 502, 510 (Tex. App.--El Paso 1994, writ denied). Error is reversible only when, viewed
in the totality of the circumstances, it amounted to such a denial of the rights of the complaining party that
it was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Tex.
R. App. P. 81(b)(1); Hart, 881 S.W.2d at 511. Under Rule 81(b)(1), Crown must persuasively
demonstrate to this Court that it has suffered harm from submission of the defective portion of the liability
question. See Hart, 881 S.W.2d at 511. Crown has not met that burden. 

 Whether the jury may have relied upon a legal theory submitted in error is not dispositive
of the harm issue because it does not affirmatively demonstrate that the error probably caused rendition of
an improper judgment. Provident Am. Ins. Co. v. Castaneda, 914 S.W.2d 273, 278 (Tex. App.--El
Paso 1996, writ requested). While it is possible that the jury made an affirmative finding based upon an
improperly submitted theory, possibility is not a sufficient showing under Rule 81(b)(1). Hart, 881
S.W.2d at 511. In Hart, another unfair claims case, the trial court improperly submitted a liability issue
tracking § 17.46(a). As in this case, other liability theories were submitted in broad form with one answer
blank for the group of theories. The court found that because at least one of the liability theories supported
the verdict, error was harmless. Id. at 510-12. 

 In order to conclude that the error complained of resulted in harm requiring reversal, we
must next determine whether there is evidence supporting an affirmative answer to any of the other legal
theories propounded to the jury. Id. at 510-12; see also Ford Motor Co. v. Pool, 688 S.W.2d 879, 882
(Tex. App.--Texarkana 1985), rev'd in part on other grounds, 715 S.W.2d 629 (Tex. 1986) (error
in special issue as to one theory of liability harmless where there was evidence to support other properly
submitted legal theory set forth in same question); Bernstein v. Portland Sav. & Loan Assoc., 850
S.W.2d 694, 702 (Tex. App.--Corpus Christi 1993, writ denied) (jury instructed on three different
fraudulent acts, but instruction as to one type of fraud was erroneous; because jury found fraud on
broad-form jury question, court could not determine which of three acts of fraud was found by jury; to
determine if error was harmful, court examined whether jury's finding of fraud was supported under other
two types of fraud). If the evidence supports the jury's finding on any legally recognized theory submitted
in the charge, then Crown has failed to demonstrate that it is more likely than not that an improper judgment
resulted from the error. See Hart, 881 S.W.2d at 511; Bernstein, 850 S.W.2d at 702. 

 Thus, if any one of the theories submitted under a broad-form liability submission is a legally
recognized cause of action and is factually supported by the evidence, the judgment must be upheld
regardless of whether other submitted theories are legally and factually supported. See Castaneda, 914
S.W.2d at 278; Hart, 881 S.W.2d at 511. In this case, we find there is sufficient evidence to support a
finding of a violation under sub-parts "f" and "g" to uphold the jury's liability finding. (7) The error, if any, in
submitting one erroneous legal theory is, therefore, harmless. We accordingly overrule Crown's first cross
point. 

 In its seventh cross point, Crown asserts that the evidence was legally and factually
insufficient to support a finding that Crown's actions were a producing cause of Casteel's injuries. A
producing cause is an efficient, exciting, or contributing cause, which in a natural sequence, produced
injuries or damages complained of, if any. Union Pump Co. v. Allbritton, 898 S.W.2d 773, 775 (Tex.
1995). Foreseeability is not a requirement of producing cause; rather, producing cause requires that the
conduct complained of must be a substantial factor in bringing about the plaintiff's injuries. Id. 

 Crown points to its evidence showing that Casteel's injuries were the result of other factors
in his life. We must, however, review the evidence in the light most favorable to the jury's finding and
uphold the jury's finding unless it is so against the great weight and preponderance of the evidence as to
be manifestly unjust or erroneous. Pool, 715 S.W.2d at 635. Casteel testified that his emotional, financial,
and other injuries were caused by the problems with the Crown policies. The jury was free to weigh the
credibility of this evidence against that presented by Crown, and we cannot say that the jury's finding was
so against the great weight and preponderance of the evidence as to be manifestly unjust or erroneous. 
We, therefore, overrule Crown's seventh cross point. 

 Crown's eighth, ninth, and tenth cross points hinge on cross point seven. In its eighth and
ninth cross points, Crown contends the evidence was legally and factually insufficient to support the jury's
findings that Casteel has suffered past lost income damages in the amount of $400,000 and that he will
suffer future income damages in the amount of $1,000,000. Specifically, Crown asserts that the evidence
was legally or factually insufficient to support a finding that Casteel's changed financial status was related
to Crown's actions. Having determined that sufficient evidence supports the jury's finding that Crown's
acts or omissions were a producing cause of Casteel's injuries, we accordingly hold that the jury's
determination of past and future income damages is supported by sufficient evidence. We overrule
Crown's eighth and ninth cross points. 

 In its tenth cross point, Crown contends that if this Court determines that the jury's finding
on lost past and future income is supported by the evidence, we should find that the jury's award of
$1,400,000 is excessive and suggest a remittitur. In its next cross point, Crown contends the trial court
erred by excluding evidence included in its offer of proof. Crown has provided this Court with no argument
or authority supporting either position. We, therefore, overrule cross points ten and eleven. 

 Crown asserts in its twelfth cross point that prejudgment interest on Casteel's actual
damages should be calculated as simple interest. Because the trial court did not render judgment in favor
of Casteel, it did not state the method of computation to be employed. Judgments for personal injuries must
include prejudgment interest, calculated as simple interest. Tex. Rev. Civ. Stat. Ann. art. 5069-1.05, § 6
(West Supp. 1997). In this cause, the portion of damages upon which prejudgment interest must be
calculated is the $1,400,000 which the jury awarded Casteel for his past and future lost earnings. 

 Casteel's loss of his business is an economic injury because the injury was not physical in
nature. See Associated Tel. v. Five D's Publishing, 849 S.W.2d 894, 900 (Tex. App.--Austin 1993,
no writ) (holding lost interest in telephone directories was an economic loss because the interest was
intangible and the injury was not physical in nature); see also Crum & Forster, Inc. v. Monsanto Co., 887
S.W.2d 103, 154 (Tex. App.--Texarkana 1994, no writ) (loss of the cost of defending litigation was
economic rather than physical in nature, was not property damage or personal injury and, therefore, was
not subject to calculation under article 5069-1.05, § 6 ). At least one court of appeals has held that
damages for lost wages and mental anguish are "personal injury damages" under the Workers'
Compensation Act and, therefore, are subject to the computation scheme in Article 5069-1.05, section 6
of the Revised Civil Statutes. Acme Boot Co. v. Montenegro, 862 S.W.2d 806, 811 (Tex. App.--El
Paso 1993, no writ). Article 5069-1.05, section 6 of the Revised Civil Statutes, however, enumerates only
wrongful death, personal injury, and property damage cases as requiring the use of simple interest. Tex.
Rev. Civ. Stat. Ann. art. 5069-1.05, § 6. It does not define "personal injury." See id. Crown gives us
no reason to read the section broadly to include economic losses. Therefore, we hold article 5069-1.05,
section 6 does not control the calculation of prejudgment interest on lost income arising out of an Article
21.21 unfair practices claim and that prejudgment interest should be compounded daily as in Cavnar v.
Quality Control Parking, Inc., 696 S.W.2d 549, 554 (Tex. 1985). We overrule Crown's twelfth cross
point. In a related cross point, Crown asserts that if Cavnar applies to Casteel's award, he is not entitled
to prejudgment interest on future damages because those damages have not yet accrued. Casteel
conceded this in his reply point, and we agree. See id. Casteel is only entitled to prejudgment interest on
his past damages. Id. We sustain cross point fourteen. 

 In its thirteenth cross point, Crown contends that prejudgment interest on Casteel's
damages does not begin to accrue until August 19, 1994, the date Casteel's action was filed. We
disagree. Because article 5069-1.05, section 6 does not apply, prejudgment interest is calculated from the
date actual damages occurred rather than from the date suit was filed. Id. Casteel's damages for his loss
of income accrued on the date the Fergusons filed suit, August 16, 1991. Prejudgment interest should,
therefore, be calculated from that date. We overrule Crown's thirteenth cross point. 

 In its fifteenth point of error, Crown argues that prejudgment interest should not be included
in the amount of damages to be trebled. We disagree. Prejudgment interest may not be awarded on
trebled damages. Vail v. Texas Farm Bureau Mut. Ins. Co., 754 S.W.2d 129, 137 (Tex. 1988). 
However, prejudgment interest is an element of actual damages. Cain v. Pruett, 938 S.W.2d 152, 158
(Tex. App.--Dallas 1996, no writ); Paramore v. Nehring, 792 S.W.2d 210, 212 (Tex. App.--Austin
1990, no writ). The proper process for calculating treble damages is, therefore, to (1) calculate
prejudgment interest on the amount of damages assessed in the verdict, (2) add prejudgment interest to the
assessed damages to arrive at the total amount of "actual damages," then (3) treble that sum as appropriate. 
Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1, 902 S.W.2d 488, 505 (Tex. App.--Austin
1993), rev'd in part on other grounds, 908 S.W.2d 415 (Tex. 1995); Celtic Life Ins. Co. v. Coats,
831 S.W.2d 592, 599 (Tex. App.--Austin 1992), aff'd as modified, 885 S.W.2d 96 (Tex. 1994). We,
therefore, overrule Crown's fifteenth cross point. 

 In its sixteenth cross point, Crown contends Casteel was not entitled to recover attorney's
fees because the issue was submitted using the percentage method. In its seventeenth cross point, Crown
argues that the evidence was legally and factually insufficient to support the jury's finding that an award of
40% of Casteel's recovery was reasonable and necessary attorney's fees. And in cross point eighteen,
Crown argues that if Casteel is entitled to an award of attorney's fees on a percentage basis, the amount
should be calculated based upon a percentage of the actual damages rather than actual damages plus
prejudgment interest. 

 The supreme court recently addressed the issue of percentage awards of attorney's fees
in the DTPA context in Arthur Andersen & Co. v. Perry Equipment Corp., 945 S.W.2d 812 (Tex.
1997). The court noted that while a party's contingent fee agreement should be considered by the fact
finder and is, therefore, admissible in evidence, the agreement cannot alone support an award of attorney's
fees under Texas Business and Commerce Code section 17.50(d) because, without evidence of the factors
identified in Disciplinary Rule 1.04, the jury has no meaningful way to determine if the fees were in fact
reasonable and necessary. Id. at 818-19. The court also opined that because the jury is not informed what
the total amount of the judgment will be, the jury can only speculate about whether a percentage of that
unknown recovery will represent a reasonable and necessary fee in that particular case. Id. at 819. Rather
than leave this question to speculation, the jury must decide the question of attorney's fees specifically in
light of the work performed in the very case for which the fee is sought. Id. In light of these concerns, the
court held that to recover attorney's fees under the DTPA, a plaintiff must prove that the amount of fees
was both reasonably incurred and necessary to the prosecution of the case at bar and must ask the jury
to award the fees in a specific dollar amount, not as a percentage of the judgment. Id. 

 Under Article 21.21, a prevailing plaintiff may recover a "reasonable and necessary
attorney's fee." This language tracks the language used in the DTPA. See Tex. Bus. & Com. Code Ann.
§ 17.50(d) (West Supp. 1997). We believe the same reasoning applies when attorney's fees are sought
under Article 21.21. We, therefore, hold that a plaintiff seeking an award of attorney's fees under Article
21.21 must prove that the amount of attorney's fees was both reasonably incurred and necessary to the
prosecution of the case and ask the jury to award the fees in a specific dollar amount. See Perry
Equipment Corp., 945 S.W.2d at 819. We sustain Crown's sixteenth cross point. Accordingly, we need
not address Crown's seventeenth and eighteenth cross points. 

 In Crown's final cross point, it contends that Casteel's counsel made an improper and
incurable jury argument. Specifically, Crown complains that Casteel's attorney told the jury that because
Crown is worth $7.5 billion, Casteel should recover a large amount for mental anguish damages. Crown
argues that this comment caused the jury to award Casteel $6.1 million in damages for his past and future
mental anguish. Crown does not, however, argue that the comment influenced the amount awarded for
Casteel's lost income. Because we have determined that the evidence was insufficient to support the award
of mental anguish, we need not address this cross point. 


CONCLUSION


 For the reasons discussed above, we reverse the judgment of the trial court as it relates to
Casteel's claim under Article 21.21 and render judgment in favor of Casteel against Crown in the amount
of $1,400,000, awarded as damages for his past and future loss of income. Despite our holding on his
21.21 claim, Casteel is not entitled to $6,100,000 for mental anguish damages because there was
insufficient evidence to support the jury's award. We also reverse and remand to the trial court for further
proceedings not inconsistent with this opinion: (1) calculation of the amount for which Casteel is liable to
Crown Life Insurance Company as assignee of the Fergusons after applying a dollar-for-dollar credit on
the settlement amount paid by Crown, (2) calculation of treble damages to which Casteel is entitled against
Crown, (3) calculation of prejudgment interest on the award to Casteel against Crown, and (4) a
determination of a specific dollar amount to which Casteel is entitled as a reasonable and necessary amount
of attorney's fees. We affirm the judgment in all other respects. 



 Marilyn Aboussie, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Reversed and Rendered in Part, Reversed and Remanded in Part, and Affirmed in Part

Filed: August 28, 1997

Do Not Publish Ordered Published and Released for publication July 6, 1999. Tex. R. App. P. 47.3(d).
1. Generally, when reviewing a judgment NOV, we evaluate the evidence in the light most favorable to
the jury's findings, considering only the evidence and inferences which support those findings and
disregarding evidence and inferences contrary to those findings. Johnson & Johnson Medical, Inc. v.
Sanchez, 924 S.W.2d 925, 929-930 (Tex. 1996). In this case, however, the trial court granted judgment
NOV on an issue of law, rather than based upon a jury finding. We, therefore, will review the trial court's
ruling de novo.
2. Crown does not challenge Casteel's standing based upon any of the other required elements. 
3. Crown also argued before the trial court and on appeal that Casteel's fraud claim fails because 
Crown's only duties to Casteel arose from the agency contract and, therefore, any claim related to
Crown's representations is governed by breach of contract rather than tort law. Even assuming without
deciding that Casteel's fraud claim may be raised as a tort claim, we will address Crown's affirmative
defense. 
4. The jury, in question number 24, found that Casteel was 1% liable for the Fergusons' damages and
that Crown was 99% liable. Casteel does not challenge on appeal the trial court's ruling that Crown and
Casteel are jointly and severally liable and that the percentages of liability designated by the jury are
inapplicable. 
5. Crown asserts that the trial court found Casteel to be liable to the Fergusons for $8,201,898.01. 
Crown has failed to demonstrate to this Court, however, where this specific figure is set out in the record;
additionally, Crown has not demonstrated to this Court how this amount was determined. We assume that
this amount included treble damages for which Casteel was found to be neither individually nor jointly and
severally liable. 
6. The parties also dispute whether Crown properly preserved error regarding question sixteen. We
will assume for the purposes of this review that error was preserved.
7. Sub-parts "f" and "g" of question sixteen provided:


(f) Making, issuing, circulating and causing to be made, issued and circulated, estimates,
illustrations, circulars and statements misrepresenting the terms of insurance policies issued
or to be issued, and the benefits or advantages promised thereby and the dividends or
share of the surplus to be received thereon. 


(g) Making and circulating statements containing representations with respect to the business
of insurance which are untrue, deceptive and misleading. 



">
CONCLUSION


 For the reasons discussed above, we reverse the judgment of the trial court as it relates to
Casteel's claim under Article 21.21 and render judgment in favor of Casteel against Crown in the amount
of $1,400,000, awarded as damages for his past and future loss of income. Despite our holding on his
21.21 claim, Casteel is not entitled to $6,100,000 for mental anguish damages because there was
insufficient evidence to support the jury's award. We also reverse and remand to the trial court for further
proceedings not inconsistent with this opinion: (1) calculation of the amount for which Casteel is liable to
Crown Life Insurance Company as assignee of the Fergusons after applying a dollar-for-dollar credit on
the settlement amount paid by Crown, (2) calculation of treble damages to which Casteel is entitled against
Crown, (3) calculation of prejudgment interest on the award to Casteel against Crown, and (4) a
determination of a specific dollar amount to which Casteel is entitled as a reasonable and necessary amount
of attorney's fees. We affirm the judgment in all other respects. 



 Marilyn Aboussie, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Reversed and Rendered in Part, Reversed and Remanded in Part, and Affirmed in Part

Filed: August 28, 1997

Do Not Publish Ordered Published and Released for publication July 6, 1999. Tex. R. App. P. 47.3(d).
1. Generally, when reviewing a judgment NOV, we evaluate the evidence in the light most favorable to
the jury's findings, considering only the evidence and inferences which support those findings and
disregarding evidence and inferences contrary to those findings. Johnson & Johnson Medical, Inc. v.
Sanchez, 924 S.W.2d 925, 929-930 (Tex. 1996). In this case, however, the trial court granted judgment
NOV on an issue of law, rather than based upon a jury finding. We, therefore, will review the trial court's
ruling de novo.
2. Crown does not challenge Casteel's standing based upon any of the other required elements. 
3. Crown also argued before the trial court and on appeal that Casteel's fraud claim fails because 
Crown's only duties to Casteel arose from the agency contract and, therefore, any claim related to
Crown's representations is governed by breach of contract rather than tort law. Even assuming without
deciding that Casteel's fraud claim may be raised as a tort claim, we will address Crown's affirmative
defense. 
4. The jury, in question number 24, found that Casteel was 1% liable for the Fergusons' damages and
that Crown was 99% liable. Casteel does not challenge on appeal the trial court's ruling that Crown and
Casteel are jointly and severally liable and that the percentages of liability designated by the jury are
inapplicable.